FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

04 JUL -6 PM 3: 2

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| MELINDA GOGGINS; KAYLAE GOGGINS, | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) CV 03-B-2775-W ) |
| KEITH HANNAH in his individual and official capacities; KEITH CROFFORD, in his individual and official capacities; MICHAEL SHANE GOGGINS, | ) ) ) ) ) ) |
| Defendants. | ) ) |

ENTERED
JUL - 6 2004

### MEMORANDUM OPINION

This case is presently pending before the court on Motion to Dismiss filed by defendants Keith Hannah and Keith Crofford. (Doc. 7.)[1] Plaintiffs Melinda Goggins and Kaylae Goggins have sued defendants Bibb County Sheriff Keith Hannah and Bibb County Deputy Sheriff Keith Crofford[2] for claims based on their detention by Hannah and Crofford. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendants' Motion to Dismiss, (doc. 7), is due to be granted in part and denied in part.

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

[2]Plaintiffs have also named Michael Shane Goggins, Melinda Goggins's former husband and Kaylae's father, as a defendant in this action. Mr. Goggins did not join Hannah and Crofford's Motion to Dismiss.

19

## I. **MOTION TO DISMISS STANDARD**

The Eleventh Circuit Court of Appeals has stated that a Motion to Dismiss "is viewed with disfavor and rarely granted." *Brooks v. Blue Cross and Blue Shield*, 116 F.3d 1364, 1369 (11th Cir. 1997)(citing *Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir. 1969); *International Erectors, Inc. v. Wilhoit Steel Erectors & Rental Service*, 400 F.2d 465, 471 (5th Cir. 1968)). When deciding a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the court "must accept the allegations set forth in the complaint as true." *Gonzalez v. McNary*, 980 F.2d 1418, 1419 (11th Cir. 1993)(citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986)); *see also Jackson v. Okaloosa County*, 21 F.3d 1531, 1534 (11th Cir. 1994). The court will dismiss a claim only when it is clear that no relief could be granted under any set of facts consistent with the allegations in the Complaint. *Hishon*, 467 U.S. at 73; *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). "A complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks*, 116 F.3d at 1369 (citing *Robertson v. Johnston*, 376 F.2d 43 (5th Cir. 1967))(emphasis in original).

"[T]he threshold that a complaint must meet to survive a motion to dismiss is 'exceedingly low.'" *Holley v. City of Roanoke*, 162 F. Supp. 2d 1335, 38 (M.D. Ala. 2001)(quoting *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985)). "[A] defendant thus bears the 'very high burden' of showing that the plaintiff cannot conceivably prove any set of facts that would entitle him to relief." *Beck v. Deloitte &*

*Touche*, 144 F.3d 732, 735-736 (11th Cir. 1998)(citing *Jackam v. Hospital Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986)), *cited in McClendon v. May*, 37 F. Supp. 2d 1371, 1375 (S.D. Ga. 1999).

Defendants Hannah and Crofford contend that they are entitled to qualified immunity. "While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be, as it was in this case, raised and considered on a motion to dismiss." *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)(citing *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001)). "Once an officer has raised the defense of qualified immunity, the burden of persuasion on that issue is on the plaintiff." *Id.* (citing *Suissa v. Fulton County*, 74 F.3d 266, 269 (11th Cir. 1996)).

## II. STATEMENT OF FACTS

Plaintiff Melinda Goggins and defendant Michael Shane Goggins were divorced in 1998. (Doc. 12 ¶ 8.) Mr. and Ms. Goggins had one child, plaintiff Kaylae Goggins, a minor. (*Id.*) Pursuant to the divorce decree, Ms. Goggins was awarded custody of Kaylae, and Mr. Goggins was allowed visitation. (*Id.* ¶¶ 8–9.) Mr. Goggins exercised his visitation rights sporadically. (*Id.* ¶ 9.) Ms. Goggins allowed Mr. Goggins to visit Kaylae at times not set forth in the divorce decree. (*Id.*)

Sometime in late July 2003, Mr. Goggins asked Ms. Goggins to get Kaylae for a visit on Friday, July 25, 2003. (*Id.* at ¶ 10.) Ms. Goggins told Mr. Goggins that he could pick up Kaylae on the following Sunday, but not that Friday because Ms. Goggins wanted Kaylae to attend revival services her church was holding that week. (*Id.*) Mr. Goggins threatened

to have law enforcement officers take Kaylae from Ms. Goggins. (*Id.*) The weekend of July 25, 2003 was a date scheduled for visitation according to the divorce decree. (*Id.*).

Ms. Goggins and Kaylae attended the revival on Friday, July 25, 2003. (*Id.* at ¶ 12.) At approximately 9:30 p.m., on their way home from the service, defendant Deputy Keith Crofford of the Bibb County Sheriff's Department stopped Ms. Goggins and Kaylae. (*Id.*) Crofford and Mr. Goggins were observed waiting for plaintiffs to leave the service. (*Id.*) When Crofford pulled Ms. Goggins over, he asked her if she had Kaylae with her, and she told him that she did. (*Id.*) Crofford told Ms. Goggins that he was going to take Kaylae and give her to Mr. Goggins, and he told her he would arrest her and take her to jail if she did not hand over Kaylae. (*Id.*) Crofford was "very rude and insulting." (*Id.*) During this conversation, Crofford got a copy of the divorce decree from Mr. Goggins, who had pulled in behind Crofford's patrol car. (*Id.* ¶ 13.)

Ms. Goggins's brother arrived at the scene and Crofford threatened to arrest him and then radioed for backup. (*Id.* ¶ 14.) Six or seven patrol cars arrived on the scene, including defendant Hannah. (*Id.* ¶¶ 15, 17.)

Despite repeated requests, Crofford and Hannah refused to allow Ms. Goggins and Kaylae to leave the scene for approximately an hour and forty-five minutes. (*Id.* ¶¶ 16, 17, 18.) During at least some part of this time, Hannah was attempting to interpret the divorce decree. (*Id.* ¶ 17.)

After an hour and forty-five minutes, Hannah asked Kaylae to go with her father; she refused. (*Id.* ¶¶ 18, 21.) Crofford and Hannah allowed plaintiffs to leave after Kaylae refused to go with her father. (*Id.* ¶ 22.)

Plaintiffs allege Crofford and Hannah stopped and detained plaintiffs, without arguable probable cause, because of their friendship with Mr. Goggins and solely for the purposes of coercing his desired visitation. (*Id.* ¶ 44.) Mr. Goggins did not obtain any order establishing his right to have Kaylae for a visit on July 25, 2003. (*Id.* ¶ 11.)

### III. DISCUSSION

#### A. STATE-LAW CLAIMS

Plaintiffs' Amended Complaint, (doc. 12), contains claims against Hannah and Crofford for willful and malicious abuse of process, false imprisonment, and assault and battery. Hannah and Crofford contend that plaintiffs' state-law claims against them are due to be dismissed based upon state-law sovereign immunity. (Doc. 7 ¶ 1.)

Section 14 of the Alabama Constitution provides, "[T]he State of Alabama shall never be made a defendant in any court of law or equity." ALA. CONST. Art. I, § 14. "[C]laims against state officers in their official capacity are 'functionally equivalent' to claims against the entity they represent." *Haley v. Barbour County*, Nos. 1020533, 1020534, 1021048, 1021049, 2004 WL 179313 (Ala. Jan 30, 2004)(citing, *inter alia*, *McMillian v. Monroe County*, 520 U.S. 781, 785 n.2 (1997)("We have explained that a suit against a governmental officer in his official capacity is the same as a suit against the entity of which the officer is an agent . . . ." (internal citations and quotations omitted))). Also, "under Alabama law, a

claim against an Alabama sheriff [or deputy sheriff] in his *individual* capacity is barred by the [state] doctrine of sovereign immunity. *McMillian v. Johnson*, 101 F.3d 1363, 1365 (11th Cir. 1996). Therefore, all state-law claims against Hannah and Crofford are due to be dismissed as barred by section 14 of the Alabama Constitution.

### B. FEDERAL CLAIMS

#### 1. Official-Capacity Claims

Defendants contend that plaintiffs' federal claims asserted against them in their official capacities are due to be dismissed because such claims are barred by the Eleventh Amendment of the United States Constitution. The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. This Amendment bars suits in federal court against the State brought by its own citizen as well suits brought by the citizen of another State. *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974). In Alabama, County Sheriffs and Deputy Sheriffs are considered officers of the State of Alabama. *See Monroe County*, 520 U.S. at 789 ("sheriffs are state officers, and . . . tort claims brought against sheriffs based on their official acts therefore constitute suits against the State, not suits against the sheriff's county").

"A state official may not be sued in his official capacity unless . . . Congress has abrogated the state's immunity." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997). "Congress has not abrogated Eleventh Amendment immunity in section 1983

cases." *Cross v. Alabama*, 49 F.3d 1490, 1502 (11th Cir. 1995)(quoting *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir.1990)); *see also Lancaster* 116 F.3d at 1429.

However, there is an exception to Eleventh Amendment immunity as to claims against official-capacity state actors for prospective injunctive relief. "In the landmark case of *Ex parte Young*, 209 U.S. 123 (1908), however, a significant exception to Eleventh Amendment immunity was announced. *Young* allows a federal court plaintiff to enjoin unconstitutional state action by naming the responsible state officer in the complaint, and requesting that the officer be enjoined from further unconstitutional conduct." *Gamble v. Florida Dept. of Health and Rehabilitative Services*, 779 F.2d 1509, 1511 (11th Cir. 1986); *see also Kentucky v. Graham*, 473 U.S. 159, 169 n.18 (1985)("In an injunctive or declaratory action grounded on federal law, the State's immunity can be overcome by naming state officials as defendants."). Plaintiffs' Amended Complaint seeks only prospective injunctive relief from Hannah and Crofford in their official capacities. The Amendment Complaint states –

> . . . Plaintiffs request this Court . . . upon trial of this case before a struck jury, [to] grant to Plaintiffs the following relief:
>
> . . .
>
> D. Against Defendant Crofford and Defendant Hannah, in their official capacities, an injunction prohibiting the Defendants from enforcing child visitation orders unless instructed to do so by a valid written order from a Circuit Court Judge.

(Doc. 12 at 10, ¶ D.)

Because plaintiffs' claims against Hannah and Crofford in their official capacities are limited to claims for prospective injunctive relief, defendants' Motion to Dismiss the official-capacity claims is due to be denied.

### 2. Individual-Capacity Claims

Defendants contend that the claims against them in their individual capacities are due to be dismissed because "Plaintiffs' Complaint contains virtually no specific factual allegations against Sheriff Hannah," (doc. 7, ¶ 4(a)), and because, "[u]nder the facts as alleged, neither Sheriff Hannah nor Deputy Crofford violated any clearly established constitutional right," and thus are entitled to qualified immunity, (*id.* ¶ 4(b)). Plaintiffs' Amended Complaint contains significantly more detailed facts, and such facts are sufficient to allege that Hannah personally participated in the alleged deprivation of plaintiffs' constitutional rights and that the stop and detention of plaintiffs was without probable cause in violation of plaintiffs' clearly established Fourth Amendment constitutional rights.

Recently, the Eleventh Circuit held:

> The Fourth Amendment to the United States Constitution protects the right of persons to be free from unreasonable searches and seizures. U.S. Const. amend. IV. A seizure takes place "whenever a police officer accosts an individual and restrains his freedom to walk away." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975). Traffic stops qualify as seizures under the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979).
>
> The Supreme Court has identified at least three separate categories of police-citizen encounters in determining which level of Fourth Amendment scrutiny to apply: (1) brief, consensual and non-coercive interactions that do not require Fourth Amendment scrutiny, *Florida v. Bostick*, 501 U.S. 429 (1991); (2) legitimate and restrained investigative stops short of arrests to which limited Fourth Amendment scrutiny is applied, *Terry v. Ohio*, 392 U.S.

8

1 (1968); and (3) technical arrests, full-blown searches or custodial detentions that lead to a stricter form of Fourth Amendment scrutiny, *Brown v. Illinois*, 422 U.S. 590 (1975).

> As the Magistrate Judge recognized:
>
>> At issue in this case is the second type of encounter, commonly referred to as a *Terry* stop. *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001). . . . *Terry* requires that an officer have an objective, reasonable suspicion of ***criminal*** activity. Pursuant to this standard, a traffic stop must be "reasonably related in scope to the circumstances which justified the interference in the first place," *Purcell*, 236 F.3d at 1277 (citing *Terry*, 392 U.S. at 20) . . ., and may not last "any longer than necessary to process the traffic violation" unless there is articulable suspicion of other illegal activity. *Id.* (citing *United States v. Holloman*, 113 F.3d 192, 196 (11th Cir. 1997)).
>
> *Rec. of Magis. Judge*, (Oct. 3, 2002) at 9.

*United States v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003).

The law is clearly established that law enforcement officers cannot stop and detain someone without her consent, without an "objective, reasonable suspicion of criminal activity," or without probable cause to arrest. *See id.* The Amended Complaint clearly provides sufficient facts to indicate that Crofford and Hannah stopped plaintiffs as a favor for a friend, defendant Mr. Goggins, and without an "objective, reasonable suspicion of criminal activity" or probable cause to arrest. Based on the facts set forth in the Amended Complaint, defendants are not entitled to qualified immunity.

Therefore, the court finds that defendants' Motion to Dismiss the federal claims against them in their individual capacity is due to be denied.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that plaintiffs' Amended Complaint states claims based on federal law against Hannah and Crofford in their official and individual capacities; thus defendants' Motion to Dismiss is due to be denied as to Plaintiffs' federal claims. However, plaintiffs' state-law claims against defendants Hannah and Crofford are due to be dismissed based on state sovereign immunity pursuant to section 14 of the Alabama Constitution. An order granting in part and denying in part defendants' Motion to Dismiss will be entered contemporaneously with this Memorandum Opinion.

DONE this 6th day of July, 2004.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
United States District Judge